PETRA MÁRQUEZ ESTRELLA, *Ex parte*, peticionaria.

*Número:* CE-90-655          *Resuelto:* 12 de abril de 1991

*Juan F. Esteves*, abogado de la peticionaria.

EL JUEZ ASOCIADO SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

■ Por razón de su propia esencia, el principio de soberanía conduce al rechazo de la efectividad automática de las sentencias y órdenes dictadas por los tribunales de un estado o país extranjero. Cónsono con este principio, el derecho público de las naciones del mundo civilizado requiere el reconocimiento y la convalidación de la sentencia extranjera por los tribunales del foro donde se pretende hacer efectiva la misma. El procedimiento para dicho reconocimiento y convalidación ha sido tradicionalmente denominado como "exequátur".

Aunque la antigua Ley de Enjuiciamiento Civil de 1886 fijaba los casos en que las sentencias dictadas por tribunales extranjeros tendrían efectividad en Cuba y Puerto Rico y, a la vez, prescribía el procedimiento para el juicio de exequátur, el Código de Enjuiciamiento Civil de 1904 no reprodujo las disposiciones del anterior estatuto a tales fines ni estableció normas para el reconocimiento de dichas sentencias. En igual omisión hemos incurrido hasta hoy con las subsiguientes adopciones y enmiendas de nuestras Reglas de Procedimiento Civil. *Ramírez v. Registrador*, 96 D.P.R. 342 (1968).

■ Por otro lado, debido al grado de cosmopolitismo alcanzado por nuestra sociedad, no sólo por razón del movimiento poblacional hacia otras ciudades fuera de Puerto Rico y viceversa, sino por el incremento de nuestra actividad económica en general, la cual se ha extendido a varios países en y fuera del continente norteamericano, la práctica de la acción de exequátur se ha intensificado cobrando así mayor importancia en nuestro medio jurídico.

█ Conscientes de que la concurrencia de las anteriores dos (2) circunstancias han contribuido a causar cierta confusión en el ánimo de nuestra comunidad jurídica respecto al propósito y trámite de dicha acción, la presente opinión nos permite arrojar luz una vez más sobre dicho procedimiento y adoptar las reglas procesales que han de regir su práctica de ahora en adelante. Al así hacerlo, actuamos al amparo de nuestra facultad inherente para pautar normas procesales cuando estas sean necesarias para hacer viable la tramitación de los casos. Véanse, además: Regla 71 de Procedimiento Civil de Puerto Rico, 32 L.P.R.A. Ap. III;[1] *Pérez Pascual v. Vega Rodríguez*, 124 D.P.R. 529 (1989).

## I

Los esposos Doña Petra Márquez Estrella y Don Manuel Oblites se divorciaron el 7 de abril de 1989 ante la Corte Superior de California, Condado de los Ángeles. En virtud de una estipulación de las partes presentada a dicho tribunal, la sentencia de divorcio adjudicó a la señora Márquez Estrella una parcela de terreno en el Barrio Guzmán Arriba de Río Grande y una propiedad en la Urbanización Brisas del Mar en Luquillo.

Posteriormente, interesada en inscribir a su nombre en el Registro de la Propiedad de Puerto Rico las propiedades a ella adjudicadas por la sentencia de divorcio, la señora Márquez Estrella presentó ante el Tribunal Superior, Sala de San Juan, una petición *ex parte* mediante la cual solicitó la convalidación de dicha sentencia a los fines de cumplir con las disposiciones del Art. 45 de

---

[1] Dicha regla dispone:

*"REGLA 71. CASOS NO PREVISTOS POR ESTAS REGLAS*

"Cuando no se hubiere previsto un procedimiento específico en estas reglas, el tribunal podrá reglamentar su práctica en cualquier forma que no sea inconsistente con las mismas o con cualquier disposición de ley aplicable."

la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2208,[2] y del Art. 59.1 de su reglamento.[3]

Así las cosas, el 27 de junio de 1990 el tribunal de instancia (Hon. Ángel D. Ramírez Ramírez, Juez) no dio curso a la petición presentada por la señora Márquez Estrella. Exigió a ambos ex cónyuges suscribir personalmente la petición o, en la alternativa, la presentación de una demanda por la señora Márquez Estrella en contra de su ex esposo por medio de la vía ordinaria.

Inconforme, presentó esta Moción de Reconsideración señalando, entre otras cosas, que en un procedimiento anteriormente presentado[4] por el abogado de la peticionaria ante la misma Sala del Tribunal Superior no se habían exigido ninguno de los dos (2) requisitos ordenados por el tribunal de instancia en el presente caso, por lo que tales requisitos resultaban ser improcedentes. A esta Moción de Reconsideración el tribunal de instancia dictó la resolución siguiente:

> El hecho que otro Honorable Magistrado haya resuelto distinto al suscribiente no es obligatorio, más cuando es otro juez de igual jerarquía. No Ha Lugar la reconsideración.

Inconforme, recurre la señora Márquez Estrella a este Tribunal. Señala como error, en síntesis, el que se le haya ordenado utilizar cualquiera de los procedimientos dispuestos por el tribunal a quo sin que los mismos tengan fundamento en reglamenta-

---

[2] La Ley Hipotecaria y del Registro de la Propiedad, Ley Núm. 198 de 8 de agosto de 1979 (30 L.P.R.A. sec. 2208), dispone del modo siguiente:

"También se inscribirán en el Registro los títulos, actos y contratos expresados en la sección 2201 de este título otorgados en los Estado Unidos de América, o en país extranjero, que tengan fuerza en Puerto Rico con arreglo a las leyes, y las ejecutorias pronunciadas por tribunales de los Estados Unidos de América, o extranjeros, a que deban darse cumplimiento en Puerto Rico según las normas legales vigentes, siempre que se disponga su ejecución por un tribunal local con jurisdicción."

[3] El Art. 59.1 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2003-59.1, edición especial, dispone así:

"Las sentencias a que se refiere el artículo 45 de la Ley[, 30 L.P.R.A. sec. 2208,] se inscribirán siempre que estén contenidas en una resolución ejecutoria del Tribunal Superior recaída en un procedimiento ordinario del cual será notificado el Ministerio Fiscal."

[4] Elizabeth Ann Roseberry, *Ex parte*, Civil Núm. 84-237, presentada el 12 de enero de 1984 y resuelta por el Tribunal Superior, Sala de San Juan, el 2 de febrero de 1984 (Hon. William Fred Santiago, Juez). Véase, con relación a dicha petición, *Roseberry v. Registrador*, 114 D.P.R. 743 (1983), discutido más adelante.

ción alguna, lo cual acarrearía innecesarias dilaciones e inconvenientes.

## II

En *Ef. Litográficos v. Nat. Paper & Type Co.*, 112 D.P.R. 389 (1982), enumeramos las normas de Derecho Internacional Privado que regirán, en ausencia de tratado o legislación especial, el reconocimiento y la convalidación de las sentencias extranjeras[5] en Puerto Rico. Dichas normas pueden ser resumidas del modo siguiente:[6]

1. Que la sentencia extranjera haya sido dictada por un tribunal con jurisdicción sobre la persona y el asunto que sea objeto de la misma.

2. Que la sentencia haya sido dictada por un tribunal competente.

3. Que se haya observado el debido proceso de ley por el tribunal que emitió la sentencia.

4. Que el sistema bajo el cual se dictó la sentencia se distinga por su imparcialidad y ausencia de prejuicio contra los extranjeros.

5. Que la sentencia dictada en el extranjero no sea contraria al orden público del foro requerido o local, que no sea contraria a los principios básicos de la justicia y que no haya sido obtenida mediante fraude.

En el mencionado caso advertimos que las referidas normas se aplicarán principalmente a casos en que la sentencia extranjera

---

(5) Es una sentencia extranjera aquella dictada por un tribunal ajeno al Estado Libre Asociado, por lo que serán consideradas sentencias extranjeras tanto aquellas dictadas por los tribunales de países extranjeros como por los tribunales estatales de Estados Unidos. Las sentencias dictadas por los tribunales federales se ejecutan mediante un mandamiento de ejecución expedido por la corte de distrito de Estados Unidos para el distrito donde se pretende hacer efectiva la misma, siguiendo el procedimiento dispuesto en la jurisdicción estatal para la ejecución de sus propias sentencias, a menos que exista un estatuto federal que sea aplicable, conforme lo dispone la Regla 69 de Procedimiento Civil federal, 28 U.S.C.

(6) Estas normas fueron ratificadas en *Silva Oliveras v. Durán Rodríguez*, 119 D.P.R. 254 (1987).

imponga el pago de una suma de dinero, por lo que en otros tipos de casos puede que se justifiquen ciertas variaciones a las mismas. *Ef. Litográficos v. Nat. Paper & Type Co.*, supra, pág. 405.

Un (1) año más tarde encaramos otro aspecto del problema en *Roseberry v. Registrador*, 114 D.P.R. 743 (1983): los efectos, si alguno, de la cláusula de la entera fe y crédito contenida en el Art. IV, Sec. 1 de la Constitución de Estados Unidos, L.P.R.A., Tomo 1, y de la Sec. 2 de la Ley de Relaciones Federales con Puerto Rico, L.P.R.A., Tomo 1, sobre las disposiciones del Art. 45 de la Ley Hipotecaria y del Registro de la Propiedad, *supra*, y del Art. 59.1 de su reglamento, 30 L.P.R.A. sec. 2003-59.1, edición especial, cuando se trata de una sentencia procedente de un estado norteamericano.

Al resolver la cuestión, así nos expresamos:

Las disposiciones concernidas de la Ley Hipotecaria de Puerto Rico y su Reglamento no chocan con la Constitución de Estados Unidos ni con la legislación federal citada. La Sec. 1 del Art. IV de la Constitución no prescribe el procedimiento para dar entera fe y crédito a los actos públicos, documentos y procedimientos judiciales de otras jurisdicciones domésticas. Tal sección no exige que un Registro de la Propiedad en Puerto Rico le dé directamente entera fe y crédito a una sentencia extranjera, haciendo caso omiso de las disposiciones de nuestras leyes que exigen la previa intervención de los tribunales. No opera *ex proprio vigore*.

La razón para tal regla es clara. La cláusula de entera fe y crédito está sujeta a excepciones. Las sentencias emitidas en un estado no tienen derecho a entera fe y crédito en otro estado, por ejemplo, si la sentencia se dictó sin jurisdicción sobre alguna parte o sobre la materia. *Williams v. North Carolina*, 317 U.S. 287 (1942); *Underwriters Assur. Co. v. N.C. Guaranty Assn.*, 455 U.S. 691 (1982); *Restatement Second, Judgements* Sec. 81, pág. 251 (1982). Es legítimo que un estado requiera que las sentencias extranjeras no sean ejecutables a menos que sus tribunales lo ordenen, *lo cual ofrece la necesaria oportunidad para que una parte interesada pueda interponer alguna de las defensas reconocidas a la aplica-*

*ción de la cláusula de entera fe y crédito.* (Énfasis suplido.) *Roseberry v. Registrador*, supra, págs. 746–747.[7]

◼ Aceptado el principio de que las sentencias extranjeras no operan en forma directa o *ex proprio vigore*, sino que requieren el reconocimiento de los tribunales locales, nos corresponde determinar cómo habrá de obtenerse tal reconocimiento.

### III

◼ Como se ha visto, a través de nuestra casuística hemos adoptado ya las normas con las cuales tienen que cumplir las sentencias dictadas por los tribunales extranjeros, incluso aquellas dictadas en las jurisdicciones norteamericanas, a los fines de que puedan ser reconocidas y convalidadas por nuestros tribunales mediante la acción de exequátur. Con la única excepción de lo dispuesto por el Art. 59.1 del citado reglamento, *supra*, no contamos en estos momentos con legislación que establezca la forma en que habrá de conducirse dicha acción. Así fue reconocido por este Tribunal en *Ramírez v. Registrador*, 96 D.P.R. 342, 354–355 (1968), en el cual, ante esta ausencia de reglamentación, adoptamos en forma esquemática ciertos requisitos mínimos que deben ser observados en este tipo de procedimiento. *Ramírez v. Registrador*, supra, págs. 358–360.

Hoy, en aras de la uniformidad, al ratificar y ampliar tales requisitos, procedemos a armonizar los mismos con las disposiciones del citado Art. 45 de la Ley Hipotecaria y del Registro de la Propiedad y las del Art. 59.1 de su reglamento, *supra*, así como con nuestros pronunciamientos en *Ef. Litográficos v. Nat. Paper & Type Co.*, supra, y en *Roseberry v. Registrador*, supra.

◼ Al así hacerlo tenemos que tomar en consideración, por supuesto, el requisito contenido en el mencionado Art. 45 de la

---

[7] Véanse, además, *Figueroa Pesante v. Registrador*, 126 D.P.R. 209 (1990), y *Blatt & Udell v. Core Cell*, 110 D.P.R. 142 (1980), donde se interpreta el alcance del Art. 426 de nuestro Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 1798, a la luz de dicha cláusula.

Ley Hipotecaria y del Registro de la Propiedad y los dos (2) requisitos procesales contenidos en el citado Art. 59.1 de su reglamento. Según ya ha quedado expuesto, el primero de dichos artículos exige que se decrete la ejecución de la sentencia extranjera *por un tribunal local con jurisdicción*, y el segundo exige que tal decreto recaiga *"en un procedimiento ordinario del cual será notificado el ministerio fiscal"*. El propósito de estos requisitos es el de ofrecer una razonable oportunidad a cualquier parte interesada en interponer alguna de las defensas reconocidas por el derecho internacional privado en contra de la ejecutoria cuyo reconocimiento y convalidación se persiga en el foro local. Tales defensas se derivan de las normas que adoptamos en *Ef. Litográficos v. Nat. Paper & Type Co.*, supra. A la misma vez, mediante el procedimiento ordinario exigido por el citado Art. 59.1 del reglamento hipotecario, *se aportará la evidencia demostrativa de que la sentencia extranjera cumplió con las mencionadas normas.*

En ausencia de alguna otra legislación sobre el particular resolvemos, pues, que a todos los fines legales pertinentes, para el reconocimiento y convalidación de toda sentencia extranjera o proveniente de las jurisdicciones estatales norteamericanas, se observarán las reglas siguientes:[8]

1. El mismo se iniciará mediante la presentación de una demanda en la sala correspondiente del Tribunal Superior de Puerto Rico en contra de todas las demás personas afectadas por dicha sentencia.

2. En lugar de dicha demanda se podrá admitir una solicitud *ex parte* cuando comparecen en la misma todas las personas afectadas por la sentencia cuyo reconocimiento y ejecución se pretenda. *Dicha solicitud deberá ser suscrita bajo juramento por todos y cada uno de los comparecientes.*

---

[8] Para una excelente discusión de los antecedentes del aspecto formal de este tipo de acción, véase J.L. de Passalacqua, *El exequátur en el derecho puertorriqueño*, Año XVI (Núm. 63) 63 Rev. Der. Pur. 193 (1977).

3. El procedimiento se tramitará en la forma ordinaria provista por las Reglas de Procedimiento Civil de Puerto Rico.

4. La demanda o la solicitud *ex parte* que se presente deberá estar acompañada de una copia certificada de la sentencia cuya convalidación se solicita y de una traducción fiel y exacta de la misma al idioma español en caso de que no haya sido originalmente redactada en este idioma o en el idioma inglés. La copia certificada de la sentencia debe ser legible, estar completa y deberá cumplir con los requisitos pertinentes establecidos en la Regla 79 de las Reglas de Evidencia de Puerto Rico, 32 L.P.R.A. Ap. IV.

5. En todo caso en que, a los fines de lograr su posterior inscripción en el Registro de la Propiedad, se solicite la convalidación de las sentencias a las cuales se refiere el Art. 45 de la Ley Hipotecaria y del Registro de la Propiedad, *supra*, deberá notificarse al Ministerio Fiscal.

6. En todo caso en que puedan ser afectados los intereses de menores o incapacitados, deberá incluirse en la demanda o en la solicitud *ex parte* que se presente a los padres y/o al tutor del menor o incapacitado, y se notificará de la misma al Procurador o Procuradora Especial de Relaciones de Familia para que dicho funcionario pueda defender los intereses del menor o incapacitado.

7. Cuando, a juicio del tribunal, se trate de un asunto de orden o interés público, se notificará con copia de la demanda o de la solicitud *ex parte* al Secretario de Justicia de Puerto Rico a los fines de que éste pueda comparecer en el procedimiento en representación del Estado Libre Asociado.

8. Para la revisión de las resoluciones, sentencias u otras providencias del tribunal de instancia, se seguirán los procedimientos establecidos en las Reglas de Procedimiento Civil y en el Reglamento del Tribunal Supremo.

9. Una vez decretado el reconocimiento o convalidación de la sentencia extranjera, la fase de su ejecución se regirá por las disposiciones contenidas en nuestro ordenamiento procesal vigente para la ejecución de nuestras sentencias.

En resumen, en Puerto Rico, al igual que en las demás jurisdicciones foráneas, las sentencias extranjeras, incluso las provenientes de las jurisdicciones estatales norteamericanas, no operan en forma directa o *ex proprio vigore*, sino que requieren el reconocimiento de los tribunales locales antes de que puedan ser ejecutadas o en alguna otra forma hacerse efectivas en el Estado Libre Asociado. El propósito de la acción de reconocimiento o de exequátur es el de garantizar el debido proceso de ley a las partes afectadas por la ejecutoria extranjera y conceder a éstas una oportunidad razonable para presentar sus defensas y ser escuchadas. Pero el tribunal ante el cual se practique dicho procedimiento *no podrá* entrar a considerar los méritos de la sentencia extranjera. Dicho tribunal se concretará, luego de resolver los planteamientos de índole procesal que sean pertinentes, a determinar si la sentencia extranjera cumplió con todas las normas del Derecho Internacional Privado que expusimos en *Ef. Litográficos v. Nat. Paper & Type Co.*, supra.

En cuanto a este punto cabe señalar que la validez de la sentencia extranjera y el reconocimiento de la misma por el foro donde se pretende hacerla efectiva son dos (2) conceptos distintos. La validez constituye, según se infiere de lo expresado anteriormente, un requisito para el reconocimiento. Pero el hecho de que una sentencia sea válida no conlleva necesariamente el reconocimiento de la misma, ya que ello implica la aceptación de las leyes del estado o país del foro de origen en cuanto a las personas y a la materia que quedará afectada por la ejecutoria. Por lo tanto, esta aceptación estará limitada por consideraciones de orden público, orden constitucional, los intereses, principios y valores del estado o país del foro donde se promueve el reconocimiento. Véase J.L. de Passalacqua, *El exequátur en el Derecho puertorriqueño*, Año XVI (Núm. 63) Rev. Der. Pur. 193, 210–212 (1977). No obstante, es necesario advertir que en el caso de las sentencias dictadas en las jurisdicciones estatales de Estados Unidos, los tribunales del Estado Libre Asociado, al igual que los de los demás estados, territorios o posesiones federales, tendrán que

darle entera fe y crédito a las mismas independientemente de lo que sean la política pública y las disposiciones legales de Puerto Rico sobre la materia o asunto de que se trate, siempre y cuando tales sentencias hayan sido dictadas por un tribunal con jurisdicción sobre la persona y el asunto que sea objeto de la misma, mediante el debido proceso de ley y no hayan sido obtenidas por fraude. Además del Art. IV, Sec. 1 de la Constitución de Estados Unidos, L.P.R.A., Tomo 1, véanse: 28 U.S.C. sec. 1738; *Roche v. McDonald*, 275 U.S. 449 (1928); *Fauntleroy v. Lum*, 210 U.S. 230 (1908).

## IV

Por los fundamentos expuestos, *se expedirá el auto solicitado y, de acuerdo con las disposiciones de la Regla 50 del Reglamento de este Tribunal, 4 L.P.R.A. Ap. I-A, se dictará sentencia mediante la cual se modifique conforme a lo resuelto la resolución recurrida y, así modificada, será confirmada.*